UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ALLEN CRISP, | ) | CASE NO.  5:09-cv-02212 |
| | ) | |
| Plaintiff, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | |
| STRYKER CORPORATION, et al., | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the Court on the motion of Defendant Stryker Corporation and Stryker Sales Corporation (collectively, "Stryker") for the partial dismissal of Plaintiff Allen Crisp's second amended complaint pursuant to Rule 12(b)(6).[1] (Doc. No. 187.) For the reasons that follow, Stryker's motion for partial dismissal is **GRANTED,** however, within fourteen (14) days of the date of this order, Crisp may re-plead his complaint to state claims under the Ohio Products Liability Act.

I.      FACTUAL AND PROCEDURAL BACKGROUND

The facts of this case are taken from Crisp's second amended complaint and opposition and are assumed true for the purpose of this motion to dismiss. Crisp is an Ohio resident. The Stryker defendants are Michigan corporations with their principal places of business in Kalamazoo, Michigan. On May 11, 2006, Crisp underwent orthopedic surgery on his left shoulder. The surgeon who performed the surgery implanted a Stryker-branded "pain pump"[2]

---

[1] Defendants AstraZeneca Pharmaceuticals LP and AstraZeneca LP were dismissed, with prejudice, from this action on May 12, 2010. (Doc. No. 211.)

[2] According to Stryker's website, "pain pumps are infusion devices designed to deliver controlled amounts of local anesthetics to the patient for post-operative pain management."

1

into Crisp's shoulder during the procedure. Crisp alleges the Stryker pain pump injected pain relief medication, specifically bupivacaine, manufactured by AstraZeneca, into his shoulder, and "as a result of using Defendants' products, [he] has severe loss of cartilage in his left shoulder, resulting in loss of range of motion, loss of functional use of his arm, and/or severe and permanent pain and suffering as well as other injuries." (SAC at ¶ 4.) Crisp's theory of the case, as asserted in his opposition, is that,

> [g]iven the wealth of scientific literature available, the Defendants knew or should have known of the dangers of the pain pumps when used in connection with pain pump anesthetics and implanted into a patient's shoulder following shoulder surgery, but nonetheless marketed and/or sold the pain pumps and/or pain pump medications without adequate warnings concerning these risks, including the high risk of developing glenohumeral chondrolysis.

(Plaintiff's opposition to Stryker's motion for partial dismissal, Doc. No. 198, hereinafter "Opp." at p. 3.)

The procedural history of this case is complicated, consists of over two-hundred ECF entries, and is summarized only in relevant part here. On May 8, 2008, Crisp and other plaintiffs filed a complaint in the Eastern District of New York against Defendants and other pain pump and buvicaine manufacturers. (Doc. No. 1.) After nearly one year of procedural wrangling, Crisp filed a first amended complaint on May 4, 2009. (Doc. No. 141.) On June 30, 2009, Stryker and AstraZeneca filed separate motions to sever Crisp's claims pursuant to FED. R. CIV. P. 21 and to transfer Crisp's claims to the Northern District of Ohio pursuant to 28 U.S.C. § 1404.[3] [Doc. Nos. 164 (AstraZeneca), 170 (Stryker).]

On August 5, 2009, Senior Judge Gershon issued an order granting the motions to sever and transfer, and Crisp's case ordered transferred to this district. (Doc. No. 180.)

---

[3] Section 1404(a) states that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

2

Pursuant to that order, Crisp filed his second amended complaint, asserting eight causes of action[4], on August 18, 2009. (Doc. No. 182.) On September 24, 2009, the transfer of the case was effected to this district and assigned to this Court. (Doc. No. 185.) On September 25, 2009, Stryker filed a motion for partial dismissal pursuant to Rule 12(b)(6). (Doc. No. 187.) On October 23, 2009, Crisp filed an opposition. (Doc. No. 198.) On November 3, 2009, Stryker filed a reply. (Doc. No. 199.)

In late 2009, a group of plaintiffs in other pain pump litigations across the nation filed a motion, pursuant to 28 U.S.C. § 1407(a), to the Judicial Panel on Multidistrict Litigation ("JPML") to centralize and transfer the pain pump litigations. On January 12, 2010, Crisp, who supported centralization, filed a motion to stay this case pending a decision by the JPML. (Doc. No. 202.) The JPML considered the case, *In re: Ambulatory Pain Pump-Chondrolysis Products Liability Litigation*, MDL No. 2139, in its March 2010 hearing, and on April 14, 2010, issued an order denying transfer.[5] Against this backdrop, this matter is ripe for decision.

## II. STANDARD OF REVIEW

### A. Rule 12(b)(6)

A case may be dismissed if the complaint does not state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). "A motion to dismiss for failure to state a claim is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958-59 (6th Cir. 2005). When reviewing a motion to dismiss for failure to state a claim, the Court must construe the complaint

---

[4] In order, Crisp alleges damages in the amount of ten (10) million dollars as to each of the following counts: (1) Negligence / Negligence *per se*; (2) Strict Products Liability; (3) Breach of Express Warranty; (4) Breach of Implied Warranty; (5) Fraudulent Concealment; (6) Fraudulent Misrepresentation; (7) Negligent Misrepresentation; and (8) Fraud and Deceit. (Doc. No. 182.)

[5] The JPML's decision, of course, obviates the reason behind Crisp's motion to stay this case. As such, Crisp's motion (Doc. No. 202) is **DENIED AS MOOT.**

3

in the light most favorable to the plaintiff, accept all well-pleaded factual allegations as true, and determine whether the moving party is entitled to judgment as a matter of law. *Commer. Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007) (citing *United States v. Moriarty*, 8 F.3d 329, 332 (6th Cir. 1993)). To survive a motion to dismiss under Rule 12(b)(6), the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Although this is a liberal pleading standard, it requires more than the bare assertion of legal conclusions. Rather, the complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *First Am. Title Co. v. DeVaugh*, 480 F.3d 438, 444 (6th Cir. 2007) (quoting *Se. Tex. Inns, Inc. v. Prime Hospitality Corp.*, 462 F.3d 666, 671-72 (6th Cir. 2006)).

### III.   LAW AND ANALYSIS

In their motion, Stryker seeks the dismissal of seven of Crisp's eight asserted causes of action as abrogated by the Ohio Products Liability Act, OHIO REV. CODE §§ 2307.71 through 2307.80 (the "OPLA"), and therefore barred.

**A.   The OPLA**

Section 2307.71(B) of the OPLA expressly states that "Sections 2307.71 to 2307.80 of the Revised Code are intended to abrogate all common law product liability causes of action." OHIO REV. CODE § 2307.71(B). The OPLA defines a "product liability claim" as:

> a claim or cause of action that is asserted in a civil action pursuant to sections 2307.71 to 2307.80 of the Revised Code and that seeks to recover compensatory damages from a manufacturer or supplier for death, physical injury to person, emotional distress, or physical damage to property other than the product in question, that allegedly arose from any of the following:
>
> (a)   The design, formulation, production, construction, creation, assembly, rebuilding, testing, or marketing of that product;

4

>   (b)   Any warning or instruction, or lack of warning or instruction, associated with that product;
>
>   (c)   Any failure of that product to conform to any relevant representation or warranty.

OHIO REV. CODE § 2307.71(A)(13). Courts routinely grant dismissal of non-statutory product liability causes of action brought under Ohio law. *See, e.g.*, *Tompkin v. Am. Brands*, 219 F.3d 566, 575 (6th Cir. 2000) (holding common law claim of negligent manufacture preempted by OPLA); Miles v. Raymond Corp., 612 F. Supp.2d 913 (N.D. Oh. 2009) (finding the OPLA preempted common law negligence and breach of warranty claims not separately cognizable under the OPLA).

Courts also, however, and in appropriate situations, dismiss common law causes of action preempted by the OPLA without prejudice to allow plaintiffs to re-plead such common law claims under an applicable provision of the OPLA. *See, e,g, Williams v. Bausch & Lomb Co.,* No. 2:08-cv-910, 2009 U.S. Dist. LEXIS 83526 (S.D. OH. Sept. 14, 2009); *Redinger v. Stryker Corp.*, No. 5:10-cv-104 2010 U.S. Dist. LEXIS 35311 (N.D. Ohio Mar. 12, 2010).

In this case, granting dismissal without prejudice and allowing Crisp to re-plead his causes of action, if possible, under the OPLA is appropriate. In the first instance, Defendants do not challenge the propriety of Crisp's second cause of action, titled "Strict Products Liability," as they believe "it arguably states a claim under the OPLA, and as such, Stryker does not move to dismiss it at this time." (Doc. No. 187 at p. 4.) "Claims that are authorized by the OPLA should be pled with reference to the applicable provision of the OPLA." *Stratford v. SmithKline Beecham Corp.*, No. 2:07-cv-639, 2008 U.S. Dist. LEXIS 84826 at *15-16 (S.D. Ohio June 17, 2008); *see also Delahunt v. Cytodyne Techs*, 241 F. Supp. 2d 827, 842, 843 n.6 (S.D. Ohio 2003) (in order to avoid confusion with respect to product liability claims, the complaint should clarify

5

which section of the OPLA governs each of the plaintiff's claims). Allowing Crisp to re-plead his complaint in its entirety would allow to "[plead] with reference to the applicable provision of the OPLA" as to this unchallenged count.

Second, while the OPLA does abrogate all common law products liability causes of action, certain of Crisp's claims (while subject to dismissal as currently pled) may find bases under the OPLA. "For instance, it cannot be determined whether Plaintiff's allegations in the breach of warranty claim may by authorized under OHIO REV. CODE § 2307.77, which provides that a '[a] product is defective if it did not conform, when it left the control of its manufacturer, to a representation made by that manufacturer.'" *See Redinger, supra*. Moreover, Stryker's challenge to Crisp's demand for punitive damages is not premised upon a theory that Crisp's complaint does not "contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory," *see First Am. Title Co. v. DeVaugh*, *supra*, but that Crisp does not cite the proper standard under the OPLA. (Doc. No. 187 at pp. 11-12 (noting Crisp cites "reckless conduct," "reckless indifference," "depraved indifference," and "complete disregard" in the SAC, but does not cite the proper "flagrant disregard" standard under OHIO REV. CODE § 2307.80A).) This Court cannot determine, at this point, whether Crisp's allegations as stated in the SAC may meet the OPLA's "flagrant disregard" standard.

Next, although the complaint at issue here is Crisp's second amended complaint, the Court is cognizant that this case is out of the ordinary from a procedural standpoint. Crisp originally asserted his claims as part of a multi-plaintiff (from different states) complaint, later consolidated with other cases, in the Eastern District of New York. Stryker, as Crisp pointedly notes in his opposition, previously answered the initial complaint without challenge to the

6

pleadings based on the OPLA. Finally, the filing of the second amended complaint was made solely for the purpose of severing Crisp's claims from those of his former co-plaintiffs, and was filed pursuant to a court order. The second amended complaint and the first amended complaint are substantively identical.

Finally, Stryker, who has long been on notice of the nature of Crisp's claims, will not be prejudiced by allowing Crisp to re-plead his second amended complaint to state causes of action (if possible) under the OPLA. Stryker will, of course, have an opportunity to renew their motion to dismiss after Crisp files an amended complaint.

### IV. CONCLUSION

For the foregoing reasons, Stryker's motion for partial dismissal is **GRANTED**, without prejudice to Crisp to re-plead his claims, if possible, under the OPLA within fourteen (14) days of the date of this Order. Stryker may file a responsive pleading, or answer, as appropriate, at that time.

**IT IS SO ORDERED**.

Dated:  May 21, 2010

                                                **HONORABLE SARA LIOI**
                                                **UNITED STATES DISTRICT JUDGE**